JUDGE NATHAN

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

#1

|  |  |
|---|---|
| EMILE HERIVEAUX; <br><br> Plaintiff, <br><br> vs. <br><br> MARIA YOLANDA LOPEZ-REYES; VAN LEER & GREENBERG, ESQS; EVAN DANA VAN LEER-GREENBERG, individually and as agent of VAN LEER & GREENBERG, ESQS; and HOWARD BARRY GREENBERG, individually and as agent of VAN LEER & GREENBERG, ESQS; <br><br> Defendants. | CIVIL ACTION <br><br> **17 CV 9610** <br><br> DOCKET NO. _____ <br><br><br> JURY TRIAL DEMANDED |

FILED U.S. DISTRICT COURT 2017 DEC -7 PM 1:59 S.D. OF N.Y.

## COMPLAINT

Plaintiff EMILE HERIVEAUX, Pro Se, as and for his Complaint, complaining of the Defendants, shows to this Court and alleges as follows:

## NATURE OF THE ACTION

1.  This action stems from a fraudulent Judgment entered against Plaintiff on February 2, 2017, Case No. 101452-2013, Supreme Court of the State of New York, County of New York, IAS (Individual Assignment System) Part 2. See Exhibit "A".

2.  On February 2, 2017, Maria Yolanda Lopez-Reyes' attorney Evan Van Leer Greenberg which is an officer of the Court, asks two employees of the New York County Clerk with name initials UP/TY to call Jonathan A. Judd, Court Attorney of IAS Part 2 at the Supreme

-1-

Court of the State of New York in New York County, which they did using the telephone extension number 65655.[1]

3.    Mr. Jonathan A. Judd directed the staffs of New York County Clerk via telephone to enter judgment against Plaintiff, without the Decision of the Honorable Kathryn E. Freed, Justice of the IAS Part 2, on the inquest Ordered on November 14, 2016. See Decision and Order at page 11, Exhibit "B".

4.    The inquest was calendared as **Motion Sequence No. 10, REFERENCE - HEAR & REPORT**. The said motion was adjourned on January 17, 2017 to February 14, 2017, as Maria Yolanda Lopez-Reyes' attorney Evan Van Leer Greenberg did not appear at the said inquest and then was marked off on March 9, 2017. See Exhibit "C".

5.    On February 2, 2017, Mr. Jonathan A. Judd, attorney of IAS Part 2 of the Supreme Court of the State of New York, New York County, directed the staffs of New York County Clerk to enter judgment against Plaintiff pursuant to "so ordered transcript filed on 11/21/16" that does not appear in New York County Clerk's records, which infers that the said "so ordered transcript" **does not exist**. See Exhibit "D".

6.    As the purported "so ordered transcript filed on 11/21/16" **does not exist**, the judgment entered against Plaintiff on February 2, 2017 by the New York County Clerk's staffs is **unsupported**.

7.    Even if the IAS part 2 attorney, Mr. Jonathan A. Judd, wished to direct the New York County Clerk's staffs to enter judgment against Plaintiff pursuant to a "so ordered proceeding (4 pages)" filed on 02/02/2017 in the Supreme Court Records On-Line Library

---

[1] A note written below the Clerk's signature on page '4 of 6' reads as follows: "2/2/17 Called 65655 – Judgment entered pursuant to so ordered transcript filed on 11/21/16 as per oral direction from court attorney J. Judd of Judge K. Freed  M.A.T/UP/IY". See Exhibit "A"

("SCROLL"), the said "so ordered proceeding (4 pages)" **was not calendared** by the Special Referees' Part and was entertained in violation of Rule (1) Special Referees' Part (Part SRP), of the governing Rules of the Special Referee's Part (PART SRP), Supreme Court of the State of New York, County of New York[2]. See Exhibit "E".

8.      Further, the said "so ordered proceeding (4 pages)" filed on 02/02/2017 in the Supreme Court Records On-Line Library ("SCROLL") was entertained **in violation** of the Court Decision and Order[3] dated November 14, 2016 and **without notice** to Plaintiff in violation of Plaintiff' rights to due process[4] secured by the U.S.C.A. Constitutional Amendment 5. Accordingly, the said "so ordered proceeding (4 pages)" filed on 02/02/2017 found in the SCROLL constitutes clear and convincing evidence of Fraud on the Court. See Exhibit "F".

9.      On February 2, 2017, NO decision was made by the Court on the **Motion Sequence No. 10, REFERENCE - HEAR & REPORT**. Accordingly, the Judgment directed by

---

[2] **Rule (1) Special Referees' Part (Part SRP)**, of the governing **Rules of the Special Referee's Part (PART SRP)**, mandates that "Matters referred by a Justice to a Special Referee to hear and report or to hear and determine **shall appear** on the calendar of the Special Referees' Part (Part SRP) from which assignments shall be made to a Special Referee or a Judicial Hearing Officer ("JHO"). Copy of the Rules in force on January 17, 2017, is hereto attached as Exhibit "E".

[3] The Court Decision and Order dated November 14, 2016, reads as follows: "ORDERED that Special Referee David Solomkin, to whom this action was previously assigned for the purpose of supervising discovery, shall conduct an inquest to determine the issue of plaintiff's damages, to **hear and report**, except that, **in the event of and upon filing a stipulation of the parties as permitted by CPLR 4317**, the Special Referee shall determine the aforesaid issue;". See Decision at page 11, Exhibit "B".

[4] Pursuant to U.S.C.A. Constitutional Amendment 5 "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, **nor be deprived of life, liberty, or property, without due process of law**; nor shall private property be taken for public use, without just compensation."

phone to the Clerk's staffs by the Court attorney Jonathan A. Judd against Plaintiff constitutes Fraud on the Court and its "entry" has **defiled** the Supreme Court of the State of New York.

## JURISDICTION AND VENUE

10.    This Court is authorized to entertain an "independent action" in equity, as provided for by Federal Rule of Civil Procedure 60(d)(1), the Rule 60 savings-clause provision. Also, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as a citizen of one State sues four citizens of another State and the amount in controversy is more than $75,000.00.

11.    This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), to entertain claims under NY Jud. Law § 487 and Tortuous Interference with Business Relationship as those claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in that judicial district. Venue is also proper under the principles of pendent venue because all claims arise out of the same nucleus of operative facts.

## PARTIES

### Plaintiff

13.    Plaintiff Emile Heriveaux (hereinafter "HERIVEAUX" or "Plaintiff") resides at 259 Forest Avenue, City of Paramus, Bergen County, New Jersey 07652.

### Defendants

14.    Defendant Maria Yolanda Lopez-Reyes (hereinafter "LOPEZ-REYES") resides at 4905 Fifth Avenue, Apartment 3, City of Brooklyn, Kings County, New York 11220.

15.     Defendant VAN LEER & GREENBERG, ESQS (hereinafter "VANBERG") is a company registered or organized in an unknown state, not registered or organized in New York, but doing business at 132 Nassau Street, Suite 219, City of New York, New York County, New York 10038.

16.     Defendant EVAN DANA VAN LEER-GREENBERG (hereinafter "VAN LEER") is an attorney admitted to practice in New York on January 16, 2008, Registration Number 4547030, who is a partner and agent of VANLEER & GREENBERG, ESQS, with actual place of business located at 132 Nassau Street, Suite 219, City of New York, New York County, New York 10038.

17.     Defendant HOWARD BARRY GREENBERG (hereinafter "GREENBERG") is an attorney admitted to practice in New York on October 13, 1976, Registration Number 1008895, who is a partner and agent of VAN LEER & GREENBERG, ESQS, with actual place of business located at 132 Nassau Street, Suite 219, City of New York, New York County, New York 10038.

## FACTS IN COMMON TO ALL COUNTS

18.     In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within allegations may require.

19.     In 2010, Lopez-Reyes was interested in establishing a business for importation, wholesale distribution and retail of food products.

20.     Lopez-Reyes was introduced to HERIVEAUX, director of HCACC – HISPANIC AND CHINESE AMERICAN CHAMBER OF COMMERCE, INC. ("HCACC"), by Mr.

FELIPE SALINAS who was a student of the "Export/Import" classes organized by American Community for Research and Education, Inc. under the direction of HERIVEAUX in 1993.

21.     On June 8, 2010, Lopez-Reyes, acting as representative of YOLIMEX INTERNATIONAL ("YOLIMEX"), and accompanied by her Personal Assistant FELIPE SALINAS, signed a Joint-Venture Agreement ("JVA") with HERIVEAUX. See Exhibit "G".

22.     The JVA hereto attached as Exhibit "G" reads in pertinent parts as follows:

"THIS JOINT VENTURE AGREEMENT ("Agreement") is made this 8th day of June 2010, by and between YOLIMEX INTERNATIONAL a New York company, represented by YOLANDA LOPEZ REYES, with its principal place of business located at 323 49th Street #3, Brooklyn, NY 11220 or its assigns (hereinafter "First Party"), and EMILE HERIVEAUX, a New York resident, with its office located at 350 Fifth Avenue Suite 5923, New York, NY 10118, USA, or its assigns (hereinafter, "Second Party")

WITNESSETH:

"That for and in consideration of the mutual covenants and agreements hereinafter contained, the undersigned parties hereto, intending to be legally bound hereby, agree as follows:

(1).     EXCLUSIVE RIGHTS OF BUSINESS REPRESENTATION. The First Party agrees to give exclusive rights to the Second Party to conduct business on behalf of the First Party and for the mutual benefits of both the First and Second Party, under the conditions described in paragraphs (2),  (3) and (4). See Exhibit G.

(6).     BENEFITS. The Second Party agrees to give and the First Party agrees to receive 50% of the benefits on each business transaction. See Exhibit G."

23.     On June 8, 2010, HCACC received from Lopez-Reyes the total sum of nineteen thousand five hundred ($19,500.00) dollars for the following:

(i)      One thousand two hundred ($1,200.00) dollars for the utilization of the office space of HCACC by YOLIMEX for a period of six months; See Exhibit "M" (Schedule 1);

(ii)     Three hundred ($300.00) for the incorporation of YOLIMEX INTERNATIONAL CORP.; See Exhibit "M" (Schedule 1);

(iii)    Five thousand ($5,000.00) which had to be paid by HCACC to HERIVEAUX as initial payment for MARKET RESEARCH and for the design

and implementation of MARKETING STRATEGIES as directed in paragraphs "3" and "4" of the JVA, in presence of her Personal Assistant FELIPE SALINAS; See Exhibit "M" (Schedule 2); and

(iv)     Thirteen thousand ($13,000.00) dollars which were to be utilized by HCACC as operational funds for YOLIMEX. See Exhibit "M" (Schedule 3).

24.     Upon completion of the MARKET RESEARCH it was determined that the best way for YOLIMEX to outperform the competition is through the gradual establishment of a supermarket chain for YOLIMEX, namely, NATURAL FOODS SUPERMARKET, INC. ("NATURAL FOODS") that would sell natural food products at the price of conventionally farmed products.

25.     After briefing Lopez-Reyes and her Personal Assistant, Mr. FELIPE SALINAS, on the importance of low-cost natural food products for U.S. consumers, Plaintiff agreed to provide $250,000.00 to HCACC on behalf of YOLIMEX which would be allocated as follows:

i.     One Hundred forty five thousand ($145,000.00) dollars for NATURAL FOODS which shall belong to YOLIMEX and,

ii.     One hundred five thousand ($105,000.00) dollars for natural/ organic foods imports and wholesale distribution by YOLIMEX.

26.     In August 2010, Lopez-Reyes attempted to use Mr. HECTOR VALERDI, S.S. # xxx-xx-7303, with address located at 5920 5th Avenue Apt 2R, Brooklyn, NY 11220, as Guarantor for a Lease Agreement between THIRD AVENUE BUILDING LLC and YOLIMEX INTERNATIONAL CORP, which was rejected by the Landlord. See first and last page of Lease Draft, hereto attached as Exhibit "H".

27.     As Mr. VALERDY and/or YOLIMEX did not meet the requirements of the Landlord, Lopez-Reyes sought the intervention of HCACC to negotiate the lease agreement with THIRD AVENUE BUILDING LLC on behalf of YOLIMEX.

28.     On September 10, 2010, HCACC entered into a Lease Agreement for 5 years, on behalf of YOLIMEX, with THIRD AVENUE BUILDING LLC for a first commercial space with 5,000 square feet ground floor and 5,000 square feet basement, located at 4620 3rd Avenue, Brooklyn, New York 11220. See first and last page of Lease, hereto attached as Exhibit "I".

29.     The said first commercial space was to be used to open the supermarket, namely, NATURAL FOODS SUPERMARKET, INC. ("NATURAL FOODS").

30.     The obligations of HCACC under that first Lease Agreement were: a) $72,000.00 for the first year, b) $72,000.00) for the second year, c) $75,000.00 for the third year, d) $78,000.00 for the fourth year, and e) $84,000.00) for the fifth year.

31.     On September 10, 2010, the Lease Agreement was signed by HERIVEAUX in representation of HCACC on behalf of YOLIMEX.

32.     On September 29, 2010, Lopez-Reyes sent a CASHIER'S CHECK for the sum of $50,000.00 dollars to HCACC through Mr. FELIPE SALINAS, personal assistant of Plaintiff. See Exhibit "M" (Schedule 4).

33.     On November 17, 2010, Lopez-Reyes sent a second CASHIER'S CHECK for the sum of $80,000.00 to HCACC through Mr. FELIPE SALINAS, personal assistant of Plaintiff. See Exhibit "M" (Schedule 5).

34.     From June 8, 2010, through November 17, 2010, HCACC received from Lopez-Reyes the total sum of one **$149,500.00** on behalf of YOLIMEX, of which $143,000.00 were allocated to NATURAL FOODS SUPERMARKET, INC., with a remaining balance of two thousand ($2,000.00) dollars. See Exhibit "M" (Schedules 1-5).

35.     On December 13, 2010, **HCACC** entered into another Lease Agreement, on behalf of YOLIMEX, for a second commercial space with 10,000 square feet ground floor

located at 41-47 Dundee Avenue, Paterson, New Jersey 07503. See first and last page of Lease, hereto attached as Exhibit "J".

36.    The second commercial space aforementioned had three large cold rooms (walk-in refrigerators), and was to be used for storage and distribution of food products that were to be imported from Mexico by YOLIMEX.

37.    The obligations of **HCACC** under that second Lease Agreement were: a) $72,000.00) for the first year, b) $72,000.00 for the second year, c) $96,000.00 for the third year, d) $96,000.00 for the fourth year, and e) $96,000.00) for the fifth year.

38.    On or about May 3, 2011, Lopez-Reyes asked HERIVEAUX to help her find someone to buy YOLIMEX, which owns NATURAL FOODS, because she had no money to complete the investment of YOLIMEX, and this way she could withdraw $143,000.00 out of $149,500.00 she has already invested.

39.    Upon information and belief, Lopez-Reyes invested the money that was available for the operations of YOLIMEX into a **failed** NIGHT CLUB business that was located at 1546 62nd Street, Brooklyn, NY 11219, and was left without money to complete the investment of YOLIMEX.

40.    As YOLIMEX had a delivery truck, HERIVEAUX agreed to set a local food delivery service for YOLIMEX from Hunts Point Terminal Market, Bronx New York, to supermarkets and restaurants in New York, which could attract new investors and save the corporations.

41.    With the local food delivery service, HERIVEAUX assumed that in few months YOLIMEX would be attractive enough to find an investor willing to take over Plaintiff's investment in NATURAL FOODS.

42. When HERIVEAUX was about to start the local food delivery service for YOLIMEX, the truck was gone. Lopez-Reyes, in her desperation for money, sold the truck of YOLIMEX and spent the money, as Lopez-Reyes admitted in her Deposition on August 27, 2015, page 28 lines 23 through 25, and page 29 lines 2 through 4 as follows:

> Q.  You bought a truck?
> A.  A truck.
> Q.  Do you still have that truck?
> A.  I had to sell it because of the insurance, and you know, there were some tickets issued to the vehicle.

See pages 1, 10, 28, 29 and 60 of Lopez-Reyes' Deposition Transcript. Exhibit "O".

43. As a direct and proximate result of Lopez-Reyes' action, YOLIMEX could not start the local delivery service as anticipated by HERIVEAUX.

44. As Lopez-Reyes herself ruined the only chance to get investors attracted to YOLIMEX, Lopez-Reyes was unable to receive back the **$143,000.00**, as desired.

45. Lopez-Reyes' failure to complete the investment of YOLIMEX, which owns NATURAL FOODS, resulted in the undercapitalization of YOLIMEX.

46. The undercapitalization of YOLIMEX caused HCACC to default on behalf of YOLIMEX on the lease agreement dated December 13, 2010, with PEDRO HILARIO REALTY, LLC referenced above.

47. From December 13, 2010 through June 1, 2011, HCACC has paid to PEDRO HILARIO REALTY LLC, with offices located at 4 Dundee Avenue, Paterson, New Jersey 07503, the sum of **$24,000.00** on behalf of YOLIMEX. See Exhibit "N" (Schedule 4).

48. As of June 1, 2011, HCACC was indebted to PEDRO HILARIO REALTY, LLC with offices located at 4 Dundee Avenue, Paterson, New Jersey 07503 in the amount of

**$23,220.00** on behalf of YOLIMEX, as a result of Lopez-Reyes' failure to complete the investment of YOLIMEX, which owns NATURAL FOODS. See Exhibit "N" (Schedule 17)

49.     As a result of HCACC's default on behalf of YOLIMEX on the lease agreement dated December 13, 2010, referenced above, PEDRO HILARIO REALTY, LLC **padlocked** the facility and retains the equipment bought by HCACC on behalf of YOLIMEX for NATURAL FOODS.

50.     From September 10, 2010 through June 1, 2011, HCACC has paid to THIRD AVE BUILDING LLC, with offices located at 4620 3rd Avenue, Brooklyn, New York 11220, the sum of **$54,583.70** on behalf of YOLIMEX. See Exhibit "N" (Schedule 3)

51.     As of June 1, 2011, HCACC was indebted to THIRD AVE BUILDING LLC with offices located at 4620 3rd Avenue, Brooklyn, New York 11220 in the amount of **$37,193.26** on behalf of YOLIMEX, as a result of Lopez-Reyes' failure to complete the investment of YOLIMEX, which owns NATURAL FOODS. See Exhibit "N" (Schedule 17)

52.     As a result of HCACC's default on behalf of YOLIMEX on the lease agreement dated September 10, 2010, referenced above, THIRD AVE BUILDING LLC **padlocked** the facility and retains the equipment bought by HCACC on behalf of YOLIMEX for NATURAL FOODS.

53.     From June 8, 2010 through November 15, 2010, HCACC has received from Lopez-Reyes the sum of $149,500.00 on behalf of YOLIMEX, which owns NATURAL FOODS. See Exhibit "M" (Schedules 1-5).

54.     From June 8, 2010 through March 31, 2012, HCACC has spent the sum of **$152,919.69** and accepts liabilities in the sum of **$60,413.26** on behalf of YOLIMEX and Lopez-Reyes, *inter alia*. See Exhibit "N" (Schedules 1-17).

55.     As of March 31, 2012, YOLIMEX and Lopez-Reyes, *inter alia*, was indebted to HCACC in the amount of **$63,832.95** as a result of Lopez-Reyes' failure to complete the investment of YOLIMEX, which owns NATURAL FOODS. See Exhibit "N" (Schedules 1-17).

56.     Unwilling to accept responsibility for the losses of HCACC, on October 31, 2013, Lopez-Reyes through her attorneys filed a Verified Complaint and SUMMONS WITH NOTICE against HERIVEAUX, HCACC, NATURAL FOODS and YOLIMEX in the Supreme Court of the State of New York, County of New York, Index Number 101452-2013.

## COUNT ONE

### As against Van Leer & Greenberg Esqs.; Evan Dana Van Leer-Greenberg; and Howard Barry Greenberg; for Fraud on the Court pursuant to Fed. R. Civ. P. Rule 60 (d)(3)

57.     Plaintiff repeats, re-alleges, and incorporates herein by this reference, the allegations set forth in paragraphs 1 through 56 as more fully set forth herein.

58.     Rule 60(d)(3) reads "This rule does not limit a court's power to … set aside a judgment for fraud on the court".

59.     At the outset, Lopez-Reyes <u>lied</u> to the Court in collusion with attorneys which prepared the whole scheme to harass and defraud HERIVEAUX of his money and property. In her Verified Complaint, Lopez-Reyes willfully and knowingly alleged and re-alleged **<u>under oath</u>** in paragraphs 42 and 46, 43 and 47, 44 and 49, and 45 and 48, that each of the Defendants, EMILE HERIVEAUX ("HERIVEAUX"), HCACC – HISPANIC AND CHINESE AMERICAN CHAMBER OF COMMERCE, INC. ("HCACC"), NATURAL FOODS SUPERMARKET, INC. ("NATURAL FOODS") and YOLIMEX INTERNATIONAL CORP ("YOLIMEX"), personally received $173,000.00 from Lopez-Reyes, totaling **$692,000.00.** See pages 1, 3, 5, 11, 12, 13 and 38 of Lopez-Reyes' Verified Complaint. Exhibit "K".

60.     Lopez-Reyes stated in her Deposition on August 27, 2015, page 28 lines 2 through 8 as follows:

>    Q.     How many times did you give Mr. Heriveaux money in pursuit of this venture?
>    A.     One, $20,000, the next was $10,000, then $13,000, then $50,000, but those I make transfer to his account from my bank.

See pages 1, 10, 28, 29 and 60 of Lopez-Reyes' Deposition Transcript. Exhibit "O".

61.     Lopez-Reyes was NOT able to prove that even one penny was ever transferred from her alleged bank account to HERIVEAUX's bank account, which proves that Lopez-Reyes has colluded with her attorneys, which willfully and knowingly have **deceived** the Supreme Court of the State of New York, New York County.

62.     Further, Lopez-Reyes stated in her Deposition on August 27, 2015, page 28 lines 18 through 20 as follows:

>    Q.     How much in total did you give Mr. Heriveaux?
>    A.     Um, $173,000.[5]

See pages 1, 10, 28, 29 and 60 of Lopez-Reyes' Deposition Transcript. Exhibit "O".

63.     According to Exhibit "M" (Schedules 1-5), the only entity that received $149,500 from Lopez-Reyes is HCACC, which spent $152,919.69 on behalf of YOLIMEX and assumed liabilities in an amount of $60,413.26 on behalf of YOLIMEX. See Exhibit "N" (Schedules 1 through 17).

64.     At the outset Lopez-Reyes colluded with her attorneys Van Leer and Greenberg, who used Lopez-Reyes' Verified Complaint to defraud the Supreme Court of the State of New York, as part of a scheme to obtain money from HERIVEAUX.

---

[5] According to the American Heritage® Dictionary of the English Language, Fifth Edition, "**Um** is used to express doubt or uncertainty or to fill a pause when hesitating in speaking". This infers that Lopez-Reyes **knew** she was not telling the truth.

65.     In her Verified Complaint, Lopez-Reyes willfully and knowingly alleged **under oath** in paragraph 13, "That, at all times hereinafter mentioned, and in or about June of 2010, the Defendant **HERIVEAUX** approached the Plaintiff with a business proposition, to wit, the opening and ownership of a supermarket, to be located on 3rd Avenue in Brooklyn, New York." See pages 1, 3, 5, 11, 12, 13 and 38 of Lopez-Reyes' Verified Complaint. Exhibit "K".

66.     In her Deposition on August 27, 2015, Lopez-Reyes admitted on page 10 lines 7 through 23 as follows:

> Q.     Do you know a Mr. Emile Heriveaux?
> A.     Yes.
> Q.     When did you first meet Mr. Heriveaux?
> A.     When Mr. Felipe Salinas introduce me to him in his offices.
> Q.     And who was Felipe Salinas?
> A.     It's a friend of the family.
> Q.     Of your family?
> A.     Friend.
> Q.     Right.
>         You said it's a friend of your family? I just want to clarify. It's a friend of your family?
> A.     Yes, he was a friend of us. But we are not blood related.

See pages 1, 10, 28, 29 and 60 of Lopez-Reyes' Deposition Transcript. Exhibit "O".

67.     Lopez-Reyes' statement in her Deposition on August 27, 2015, proves that her attorneys Van Leer and Greenberg have directed her to materially **lie** as she did in order to establish the element "**intent**" in her Verified Complaint.

68.     On April 2, 2014, HCACC and NATURAL FOODS defaulted for improper appearance, and Judgment was entered against them on April 2, 2015.

69.     On April 2, 2014, YOLIMEX INTERNATIONAL CORP. defaulted for nonappearance, and Judgment was entered against it on April 2, 2015.

70.     Copy of notarized letter, signed by Plaintiff, addressed to Linda Babcock at the New York State Department of State, Division of Corporations, claiming the Filing Receipt of

YOLIMEX and the Copy of the said Filing Receipt, attached hereto as Exhibit "L-1", prove that Lopez-Reyes is the owner of the corporation YOLIMEX INTERNATIONAL CORP.

71. Copy of the Certificate of Incorporation of YOLIMEX INTERNATIONAL CORP, attached hereto as Exhibit "L-2", proves that Lopez-Reyes is the owner of the corporation YOLIMEX INTERNATIONAL CORP.

72. Copy of online application for Employer Identification Number (EIN) of YOLIMEX INTERNATIONAL CORP, the Individual Tax Identification Number (ITIN) of Lopez-Reyes XXX-XX-9448 with includes the date of birth (DOB) XX/XX/1967 of Lopez-Reyes as the "Responsible Party" for YOLIMEX, and the issued Employer Identification Number (EIN) of YOLIMEX, prove that Lopez-Reyes is the only person authorized to open and manage a bank account on behalf of YOLIMEX. See Exhibit "L-3".

73. The documentary evidence submitted herewith proves that Lopez-Reyes willfully and knowingly sued and caused YOLIMEX to default, thus preventing YOLIMEX and Lopez-Reyes, *inter alia*, from paying the **$63,832.95** owed to HCACC, and that her attorneys Van Leer and Greenberg **knew** it. See Exhibit "N" (Schedules 1-17).

74. By knowingly, willfully and maliciously suing and defaulting YOLIMEX, Lopez-Reyes has tortuously interfered with the business relationship of HERIVEAUX and YOLIMEX.

75. The tortuous interference of Lopez-Reyes and her attorneys Van Leer and Greenberg with the business relationship of HERIVEAUX and YOLIMEX has resulted in economic losses and injury to HERIVEAUX.

76. On July 19, 2014, Lopez-Reyes, through her attorney Howard B. Greenberg, asked for and **received** authorizations for major national banks to release financial information about EMILE HERIVEAUX.

77. With the information obtained from the banks, Mr. Evan Dana Van Leer Greenberg and Mr. Howard Barry Greenberg, both attorneys for Lopez-Reyes, **knew** that HERIVEAUX owns Real Estate in the City of Paramus, Bergen County, New Jersey State.

78. On June 17, 2015, HERIVEAUX submitted to Lopez-Reyes, through her attorneys, his RESPONSE to Lopez-Reyes' DEMAND of a Bill of Particulars, with clear and convincing evidence that contradicted the 176 paragraphs of Lopez-Reyes' Verified Complaint.

79. On June 19, 2015, Lopez-Reyes' attorney, EVAN VAN LEER GREENBERG, used the documentary evidence provided by HERIVEAUX in support of his response to the Lopez-Reyes' demand for "a bill of particulars as to affirmative defenses" and selectively issued ten (10) subpoenas. See Exhibit "L-4".

80. Upon discovering that all the equipments of YOLIMEX have been retained by PEDRO HILARIO REALTY LLC and THIRD AVE BUILDING LLC to satisfy rents due under the two lease agreements, and that Lopez-Reyes and YOLIMEX, *inter alia*, were indebted to HCACC in the sum of **$63,832.95**, Lopez-Reyes' attorneys Van Leer and Greenberg concealed the evidence from the Court and led the Honorable Judge Kathryn E. Freed into issuing the same Order for Disclosure, several times.

81. The actions of Lopez-Reyes' attorneys Van Leer and Greenberg constitute Fraud on the Supreme Court of the State of New York, County of New York.

82. On February 23, 2016, the Court issued an Order, signed by the Honorable Kathryn E. Freed, which reads in relevant part "that the Defendant is to provide a verified BP as to Affirmative Defenses w/n 20 days and that Defendant Heriveaux **to be deposed** before a Court Attorney Referee". See Court Order hereto attached as Exhibit "L-5".

83.     A letter dated February 25, 2016, postmarked New York, Feb 29, 2016, and sent

to HERIVEAUX by JHO/Special Referee DAVID SOLOMKIN, reads as follows:

> "Dear Sir/Madam:
> You are required to attend a hearing before a JHO/Special Referee DAVID
> SOLOMKIN on the issue(s) referred to by the IAS Justice.
> The Calendar will be called in the JHO/Special Referee Part, located at 60 Centre
> Street, New York, NY 10013 in Room 250 at 9:30 AM sharp.
> **PLEASE NOTIFY ALL NECESSARY PARTIES OF THE DATE AND
> PLACE.**
> Please <u>have all **witnesses and evidence** present</u>. The <u>trial of the referred issue(s)
> will proceed day to day until completed</u>. If you are not available on the scheduled
> date, you must confer with your adversary and notify the Referee Clerk."

> <u>See</u> Referee's Letter hereto attached as Exhibit "L-6".

84.     The Court Order mentions "TO BE DEPOSED", but the JHO/Referee's letter

substituted the "TO BE DEPOSED" by "TRIAL", and with NO <u>date</u> for the alleged "TRIAL",

which constitutes **misrepresentation** and **deception**.

85.     On March 22, 2016, as the Court Order mentions "TO BE DEPOSED" and the

JHO/Referee's letter mentions "TRIAL", which contradicted the Court Order, HERIVEAUX

sent a letter to the Honorable Kathryn E. Freed, asking the Court to investigate the matter. Copy

of the said letter was also sent to Lopez-Reyes' attorneys. <u>See</u> copy of HERIVEAUX's letter

along with copy of the Court Order and Referee's letter hereto attached as Exhibit "L-7".

86.     On May 24, 2016, as no answer was received from Judge Kathryn E. Freed,

HERIVEAUX sought an Order to Show Cause for the Court to hear and rule on the matter, or to

explain why the February 23, 2016's Court Order mentions "TO BE DEPOSED" and the

Referee's letter dated February 25, 2016, mentions "TRIAL", with NO date for such TRIAL.

87.     On May 27, 2016, the Honorable Kathryn E. Freed declined to sign the Order to

Show Cause sought by HERIVEAUX against Lopez-Reyes and her attorneys Van Leer and

Greenberg for fraud on the Court. To support her decision, Judge Freed **erroneously** states as

follows: "Movant misrepresented the facts. No new trial was conducted. The Special Ref was appointed, per this Court's Order of 2/23/16, to hold a Deposition of movant. As movant has consistently failed to appear for Ct Ordered Depositions movant again failed to appear". <u>See</u> page 5 of 5, Exhibit "L-8".

88.     This is a summary of the events that prove the statement of Judge Freed to be **prejudiced**:

> (a) On March 22, 2016, Court Order mentions "TO BE DEPOSED".
>
> (b) On February 25, 2016, Referee's letter mentions "TRIAL".
>
> (c) There is NO date for the purported "TRIAL" referenced in the Referee's letter dated February 25, 2016.
>
> (d) On March 22, 2016, HERIVEAUX asks the court to investigate and clarify.
>
> (e) The Honorable Kathryn E. Freed provided NO response to HERIVEAUX's letter dated March 22, 2016.
>
> (f) On May 24, HERIVEAUX sought an Order to Show Cause.
>
> (d) On May 27, 2016, the Honorable Kathryn E. Freed declined to sign the Order to Show Cause sought by HERIVEAUX against Lopez-Reyes and her attorneys Van Leer and Greenberg for Fraud on the Court.
>
> (e) On May 27, 2016, in addition to her refusal to sign HERIVEAUX's Order to Show Cause, Judge Freed stated **erroneously**: "Movant misrepresented the facts. No new trial was conducted. The Special Ref was appointed, per this Court's Order of 2/23/16, to hold a Deposition of movant. As movant has consistently failed to appear for Ct Ordered Depositions movant again failed to appear".
>
> This **regrettable** statement of the Honorable Kathryn E. Freed, although flatly contradicted by the uncontroverted documentary evidence submitted herewith, **has prejudiced the Defense of HERIVEAUX.**

89.     This prejudicial **<u>error</u>** of the Honorable Kathryn E. Freed on May 27, 2016, has played out in favor of Lopez-Reyes' attorneys Evan Van Leer Greenberg and Howard Barry Greenberg, who have successfully **concealed** from the Court, the uncontroverted documentary evidence submitted to Lopez-Reyes by HERIVEAUX. The evidence has proven that YOLIMEX is a corporation wholly owned by Lopez-Reyes **who sued** HERIVEAUX, HCACC, NATURAL FOODS and YOLIMEX to prevent YOLIMEX and Lopez-Reyes, *inter alia*, from paying the

sum of **$63,832.95** owed by them to HCACC. <u>See</u> Exhibit "E" (Schedules 1-17) and Exhibits L-1, L-2 and L-3.

90.     This prejudicial **<u>error</u>** of the Honorable Kathryn E. Freed on May 27, 2016, has benefitted Lopez-Reyes' attorneys Evan Van Leer Greenberg and Howard Barry Greenberg, who have successfully **<u>concealed</u>** from the Court, the fact that on June 19, 2015, they selective issued ten (10) subpoenas which allowed them to discover that all the equipments of YOLIMEX and NATURAL FOODS were **<u>retained</u>** and **<u>padlocked</u>** by PEDRO HILARIO REALTY LLC and THIRD AVENUE BUILDING LLC as referenced above. <u>See</u> Exhibit "L-4".

91.     The concealment of evidence by Lopez-Reyes' attorneys Evan Van Leer Greenberg and Howard Barry Greenberg, compounded with the prejudicial **<u>error</u>** of the Honorable Kathryn E. Freed on May 27, 2016, has led the Court to issue the Decision and Order dated November 14, 2016, striking the answer of HERIVEAUX on the basis of a purported "refusal to obey an order for disclosure". <u>See</u> **<u>LEGAL CONCLUSIONS</u>** on page 8 of DECISION AND ORDER, Index No.: 101452/13, Mot. Seq. Nos. 007 and 009 hereto attached as Exhibit "B".

92.     The Court Decision and Order dated November 14, 2016, hereto attached, as Exhibit "B", states in the last paragraph at page 11 as follows:

"ORDERED that Special Referee David Solomkin, to whom this action was previously assigned for the purpose of supervising discovery, shall conduct an inquest to determine the issue of plaintiff's (Lopez-Reyes) damages, **to hear and report**, <u>except that</u>, **in the event of and   upon   filing a stipulation of the parties as permitted by CPLR 4317, the Special Referee shall determine the aforesaid issue;**"

93.     Record printed from the website of the Supreme Court of the State of New York, at "http://iapps.courts.state.ny.us/iscroll/Motions.jsp?IndexNo=101452-2013#" has proven that the inquest was calendared by the Special Referee's Part Clerk as Motion Sequence No. 010 "REFERENCE – HEAR & REPORT" in compliance with the Order of Reference. See Exhibit "L-9".

94.     On January 17, 2017, HERIVEAUX waited for approximately two hours in the JHO/Special Referee Part, located at 80 Centre Street, New York, NY 10013 in Room 112 from 9:30 AM, as NOTICED in the JHO/Special Referee Part calendar. As Lopez-Reyes did not appear, around 10:00 AM, the Referee Clerk called the office of Lopez-Reyes' attorneys where he was given the cell phone of Lopez-Reyes' attorney VAN LEER. The Referee Clerk called the cell phone of VAN LEER, who asked the Referee Clerk to wait for him for 15 minutes. As Lopez-Reyes and her attorney VAN LEER did not appear, around 11:00 AM, the Referee Clerk adjourned the INQUEST to February 14, 2017.

95.     Record printed from the Supreme Court of the State of New York's website at "http://iapps.courts.state.ny.us/iscroll/MotionApp.jsp?IndexNo=01014522013&CID=010&APPF=-&XCID=10" has proven that the inquest calendared as Motion Sequence No. 010 "REFERENCE – HEAR & REPORT" was first adjourned on Tuesday, January 17, 2017, by the Special Referee's Part Clerk to February 14, 2017, then to March 9, 2017. The REFERENCE was marked off on March 9, 2017. See Exhibit "L-10".

96.     On January 17, 2017, the inquest calendared by the Special Referee's Part Clerk as Motion Sequence No. 010 "REFERENCE – HEAR & REPORT" was adjourned around 11:00 AM, as referenced in Exhibit "R" above. At 2:30 PM on the same day, a report was entered in

the Supreme Court Records On-Line Library ("SCROLL") showing that the INQUEST was held by Justice Martin Schoenfeld. See Exhibit "L-11".

97.     **Rule (1) Special Referees' Part (Part SRP)**, of the governing **Rules of the Special Referee's Part (PART SRP)**, mandates that "Matters referred by a Justice to a Special Referee to hear and report or to hear and determine **shall appear** on the calendar of the Special Referees' Part (Part SRP) from which assignments shall be made to a Special Referee or a Judicial Hearing Officer ("JHO"). Copy of the Rules in force on January 17, 2017, is hereto attached as Exhibit "E".

98.     In the Court Decision above referenced above, Judge Kathryn E. Freed "ORDERED that Special Referee David Solomkin... shall conduct an inquest to determine the issue of plaintiff's damages, **to hear and report,** except that, **in the event of and upon filing a stipulation of the parties as permitted by CPLR 4317, the Special Referee shall determine the aforesaid issue;**". See Decision and Order at page 11, last paragraph, Exhibit "B".

99.     Judge Martin Schoenfeld stated in the second paragraph on page 12 of the transcript dated January 17, 2017, as follows: **"Counsel, if you would get a copy of the Court's decision, you don't need your client's testimony, just my decision, I will so order it and you will be able to get your judgment entered accordingly"**, which infers that Judge Schoenfeld did NOT bother himself to read the Court Decision and Order dated November 14, 2016. See Decision and Order at page 11, last paragraph, Exhibit "B".

100.    The Court Decision and Order dated November 14, 2016, did not grant Justice Martin Schoenfeld any authority to fulfill the duties of the Special Referee David Solomkin, much less to entertain a motion to hear and determine. See Exhibit "F".

101.    The inquest entertained on January 17, 2017, by Judge Martin Schoenfeld in **collusion** with Lopez-Reyes attorneys Van Leer and Greenberg, in **violation** of **Rule (1) Special Referees' Part (Part SRP)** of the Supreme Court of the State of New York, Civil Branch, New York County, in **violation** of the Court Decision and Order dated November 14, 2016, and **without notice** to HERIVEAUX, constitutes Fraud on the Supreme Court of the State of New York, County of New York.

102.    By entertaining an inquest on January 17, 2017, **without notice** to HERIVEAUX, Judge Martin Schoenfeld **colluded** with Lopez-Reyes' attorneys Van Leer and Greenberg and **prevented** HERIVEAUX from presenting to the Court the uncontroverted documentary evidence that has proven that YOLIMEX is indebted to HCACC in the amount of **$63,832.95**, and that Lopez-Reyes sued HERIVEAUX, HCACC, NATURAL FOODS and YOLIMEX to prevent YOLIMEX and Lopez-Reyes, *inter alia*, from paying the **$63,832.95** that they owed to HCACC.

103.    The unconscionable action of Judge Martin Schoenfeld in **collusion** with Lopez-Reyes attorneys, Van Leer and Greenberg constitutes one of the most **pervasive** and **egregious** forms of fraud committed on the Supreme Court of the State of New York, County of New York.

104.    On February 2, 2017, Maria Yolanda Lopez-Reyes' attorney and officer of the Court, Evan Van Leer Greenberg asks two employees of the New York County Clerk with name initials UP/IY to call Jonathan A. Judd, Court Attorney of IAS (Individual Assignment System) Part 2 at the Supreme Court of the State of New York in New York County, which they did using the telephone extension number 65655.

105.    As mentioned earlier in this Complaint, on February 2, 2017, Mr. Jonathan A. Judd, attorney of IAS Part 2 of the Supreme Court of the State of New York, New York County,

directed the staffs of New York County Clerk to enter judgment against HERIVEAUX pursuant to "so ordered transcript filed on 11/21/16" that does not appear in the Supreme Court Records On-Line Library ("SCROLL"), which infers that the said "so ordered transcript" **does not exist**. See Exhibit "D".

106.    The unconscionable action of Jonathan A. Judd, attorney of IAS Part 2 of the Supreme Court of the State of New York, New York County, in collusion with Lopez-Reyes' attorney Evan Van Leer Greenberg on February 2, 2017 constitutes one of the most **pervasive** and **egregious** forms of fraud committed on the Supreme Court of the State of New York, County of New York.

107.    On July 27, 2017, Plaintiff filed a motion with the Supreme Court of the State of New York, New York County to vacate the said judgment dated February 2, 2017.

108.    On September 11, 2017, the Clerk of IAS part 2 sent a letter noticing HERIVEAUX that the motion has been scheduled in Part 2 for November 21, 2017 at 10:00 AM. See Exhibit "L-12".

109.    On November 3, 2017, Mr. Jonathan A. Judd, attorney of IAS part 2 sent a letter noticing HERIVEAUX that there is no need for the parties to appear in court on November 21, 2017 as the motion will be taken on submission. See Exhibit "L-13".

110.    Nevertheless, on November 21, 2017, at 10:00 AM, HERIVEAUX appeared in Part 2 to see what's going on. The Honorable Kathryn E. Freed did go to Court that day according to the Clerk of Part 2. HERIVEAUX asked her to stamp the letter as proof of his appearance, which she did. See Exhibit "L-14".

111.    Inexplicably, the Supreme Court Records On-Line Library ("SCROLL") shows that the motion was DECIDED-OPEN APPEARANCE on November 21, 2017. The relief

sought by HERIVEAUX was denied. Although judge Freed did NOT go to court on November 21, 2017, and there is NO records of any proceedings in Part 2 that day. See Exhibit "L-14".

112.    The letter of the Court attorney Jonathan A. Judd dated November 3, 2017, is a deliberate attempt to prevent HERIVEAUX from acknowledging that his motion was NOT DECIDED-OPEN APPEARANCE on November 21, 2017, as purportedly shown on the Supreme Court Records On-Line Library ("SCROLL"). In doing so, Mr. Jonathan A. Judd, IAS part 2 attorney, in collusion with Lopez-Reyes' attorneys Van Leer and Greenberg not only have committed Fraud on the Court but also have **defiled** the Supreme Court of the State of New York, New York County.

113.    HERIVEAUX's motion to vacate the default judgment was DENIED, **without hearing** and the IAS Part 2 attorney Jonathan A. Judd willfully and knowingly **lied** about it on the Supreme Court Records On-Line Library ("SCROLL").

114.    The unconscionable action of Jonathan A. Judd, IAS Part 2 attorney, in collusion with Lopez-Reyes' attorneys Van Leer and Greenberg on November 21, 2017 constitutes one of the most **pervasive** and **egregious** forms of fraud committed on the Supreme Court of the State of New York, County of New York.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

## COUNT TWO

### As against Van Leer & Greenberg Esqs.; Evan Dana Van Leer-Greenberg; and Howard Barry Greenberg; for Violations of the New York Judiciary Law § 487.

115.    Plaintiff repeats, re-alleges, and incorporates herein by this reference, the allegations set forth in paragraphs 1 through 114 as more fully set forth herein.

116.    New York Judiciary Law § 487 provides, in pertinent part, as follows: "An attorney or counselor who ... [i]s guilty of any deceit or collusion, or consents to any deceit or

collusion, with intent to deceive the court or any party ... [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

117.    As set forth above, Van Leer & Greenberg Esqs., Evan Dana Van Leer-Greenberg and Howard Barry Greenberg engaged in an intentional pattern of collusion, wrongdoing and deceit with intent to deceive Plaintiff and the Supreme Court of the State of New York and were successful in deceiving the Supreme Court of the State of New York, County of New York as fully described in paragraphs 1 through 114 above.

118.    As a result of the deceitful and fraudulent conduct of Van Leer & Greenberg Esqs., Evan Dana Van Leer-Greenberg and Howard Barry Greenberg, Plaintiff has been injured in an amount to be established at trial.

119.    By reason of the foregoing, Plaintiff is entitled to monetary damages against Van Leer & Greenberg Esqs., Evan Dana Van Leer-Greenberg and Howard Barry Greenberg, treble damages, and reasonable attorneys' fees pursuant to New York Judiciary Law § 487.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

## COUNT THREE

### As against Maria Yolanda Lopez-Reyes; Van Leer & Greenberg Esqs.; Evan Dana Van Leer-Greenberg; and Howard Barry Greenberg; for Tortuous Interference with Contract.

120.    Plaintiff repeats, re-alleges, and incorporates herein by this reference, the allegations set forth in paragraphs 1 through 119 as more fully set forth herein.

121.    Defendants are and have been aware of a valid and enforceable agreement between Plaintiff and YOLIMEX as described in paragraphs 21 through 25 above.

122.    Defendants willfully, knowingly and maliciously sued and caused YOLIMEX to default. As a direct and proximate result of their actions, judgment was entered against

YOLIMEX along with HCACC and NATURAL FOODS on April 2, 2015, in the Supreme Court of the State of New York, County of New York.

123.    As a direct, proximate and foreseeable result of the judgment against YOLIMEX, Plaintiff has been forced to defend himself against claims in Lopez-Reyes' Verified Complaint which have caused significant pecuniary, reputational, and other damages. These injuries include significant damage to HERIVEAUX's reputation, and attorneys' fees and costs to defend himself, HCACC and NATURAL FOODS.

124.    Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiff is entitled to, and should be awarded, punitive damages against each of the Defendants.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

## COUNT FOUR

### Request for Declaratory Judgment, Preliminary and Permanent Injunction
**(As against Maria Yolanda Lopez-Reyes; Van Leer & Greenberg Esqs.; Evan Dana Van Leer-Greenberg; and Howard Barry Greenberg;)**

125.    Plaintiff repeats, re-alleges, and incorporates herein by this reference, the allegations set forth in paragraphs 1 through 124 as more fully set forth herein.

126.    Plaintiff is entitled to a declaratory judgment that the judgment dated February 2, 2017, entered fraudulently on the Supreme Court of the State of New York, County of New York, against Plaintiff is VOID and unenforceable pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

127.    By this claim, Plaintiff seeks a declaratory judgment that the judgment against HERIVEAUX is VOID and unenforceable under the U.S.C.A. Constitutional Amendment 5 and on the ground of fraud upon the Supreme Court of the State of New York, New York County.

128. On September 29, 2017, Maria Yolanda Lopez-Reyes, acting Pro Se, filed a WRIT OF EXECUTION against HERIVEAUX for the fraudulent judgment entered in the Superior Court of New Jersey, Law Division. Although a motion to vacate the judgment was pending before the Supreme Court of the State of New York, County of New York, IAS Part 2. The motion was denied fraudulently, on November 21, 2017, **without hearing**, **without proceedings** and the Honorable Kathryn E. Freed was not in Court on that day, as HERIVEAUX observed upon appearing at IAS Part 2, and as he was informed by the IAS Part 2 Clerk that "Judge Freed will not be in Court today (11/21/2017". See Exhibit "L-15".

129. There were NO hearings and NO proceedings in Part 2 on that Tuesday, November 21, 2017, notwithstanding a very different story was recorded in the Supreme Court Records On-Line Library ("SCROLL"), which reads as follows:

**Appearance On Sequence Number**: 013—**Justice**: Freed, Kathryn E.
**Appearance Date**: Tuesday, Nov 21, 2017—**Part**: IAS Motion 2
**Type**: Motion—**Action at Appearance**: MOTION DECIDED-OPEN APPEARANCE
**Comment**: 10 AM—**Additional Comment**: Per Letter.

First let us compare the letter of the Part 2 Clerk, dated September 11, 2017 and signed by Wallace Kamper, noticing HERIVEAUX for "appearance" on November 21, 2017, 10 AM. The letter of the Part 2 Clerk coincides with the record in the Supreme Court Records On-Line Library ("SCROLL"). Except that the record in the Supreme Court Records On-Line Library ("SCROLL") is **FAKE** record. Because there were NO hearings and NO proceedings in Part 2, on Tuesday, November 21, 2017, as Judge Freed did NOT go to Court.

Now, let us compare the letter of the Part 2 Court attorney dated November 3, 2017 and signed by Jonathan A. Judd, Esq., Law Clerk to Justice Kathryn E. Freed.

The letter of the Court attorney dated November 3, 2017 does NOT coincide with the record in the Supreme Court Records On-Line Library ("SCROLL") on November 20, 2017 (the day before the hearing). See Exhibit "L-16".

The letter of the Court attorney does NOT coincide with the record in the Supreme Court Records On-Line Library ("SCROLL") of November 21, 2017 (the day of the purported appearance). See Exhibit "L-17".

In conclusion, the Court attorney knew there will be NO hearings and NO proceedings on November 21, 2017, as Judge Freed would be absent.

Nevertheless, the record in the SCROLL shows "MOTION DECIDED OPEN-APPEARANCE". Thanks to the Almighty Lord God, HERIVEAUX was in Part 2 on November 21, 2017, 10:00 AM., and was able to discover how the Honorable Kathryn E. Freed in collusion with the Court attorney Jonathan A. Judd, used the judiciary office to advance the private interest of Van Leer & Greenberg, Esqs., through **lies**, **misrepresentations**, and **deception** of the Supreme Court of the State of New York, County of New York, in violation of 22 NYCRR Section 100.1[6], 22 NYCRR Section 100.2(A)[7], 22 NYCRR Section 100.2(C)[8] and 22 NYCRR Section 100.3(B)(4)[9].

---

[6] 22 NYCRR Section 100.1 requires judges to uphold the integrity and independence of the judiciary: "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Part 100 are to be construed and applied to further that objective."

[7] 22 NYCRR Section 100.2(A) requires judges to avoid impropriety and the appearance of impropriety in all of the judge's activities: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

[8] 22 NYCRR Section 100.2(C) requires that: "A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit

130.    On November 27, 2017, a SHERIFF'S NOTICE TO DEBTOR was mailed to

EMILE HERIVEAUX, 259 Forest Avenue, Paramus, NJ 07652. Docket #: DJ10424817,

Sheriff's #: 17006528, which reads as follows: "Your personal property, real property, or bank

account has been levied upon at the instruction of

> VAN LEER & GTEENBERG
> 132 NASSAU STREET
> NEW YORK, NY 10038
> 212-962-1596

Attorneys at Law to satisfy in whole or in part the judgment against you in the above matter. See

Exhibit "L-18".

131.    By reason of the fraudulent acts and fundamentally fraud upon the Supreme Court

of the State of New York, an actual and justiciable controversy has arisen and now exists

between Plaintiff and the Defendants as to whether the judgment entered against HERIVEAUX

is VOID and unenforceable and establishing that HERIVEAUX's assets are safe from the

Defendants' fraudulent actions. The actions of the Defendants have damaged and are threatening

to continue damaging HERIVEAUX. Unless the controversy between the parties is resolved, the

Defendants will continue to seek enforcement of the fraudulent judgment and harm Plaintiff.

132.    Plaintiff has no adequate remedy at law. A declaratory action is necessary and

useful in resolving and disposing of the question of whether the fraudulent judgment is VOID

---

others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness."

[9] 22 NYCRR Section 100.3(B)(4) requires judges to perform the duties of judicial office impartially and diligently: "A judge shall perform judicial duties without bias or prejudice against or in favor of any person. A judge in the performance of judicial duties shall not, by words or conduct, manifest bias or prejudice, including but not limited to bias or prejudice based upon age, race, creed, color, sex, sexual orientation, religion, national origin, disability, marital status or socioeconomic status, and shall require staff, court officials and others subject to the judge's direction and control to refrain from such words or conduct."

and enforceable, and is the best and most effective remedy for finalizing the controversy between the parties as to this issue and for relieving Plaintiff from the expensive and damaging uncertainty surrounding the pending enforcement of the fraudulent judgment.

133. Plaintiff is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees, and anyone else acting in concert with the Defendants from commencing, prosecuting, or advancing in any way—directly or indirectly—any attempt to enforce the judgment against HERIVEAUX in any court, tribunal, or administrative agency in any jurisdiction, in the United States or abroad, including any attempt to attach or seize any Plaintiff's asset, whether prejudgment or otherwise, until this court determines the merits and enters judgment on Plaintiff's claims against the Defendants in this action.

## **PRAYER FOR RELIEF**

### **On Count One**

1. For an Order, pursuant to Fed. R. of Civ. P. Rule 60(d)(3) vacating the judgment entered against Plaintiff on the grounds that said judgment was procured by fraud upon the court Supreme Court of the State of New York, County of New York.

### **On Count Two**

2. For general damages according to proof at trial, trebled pursuant to New York Judiciary Law § 487; and

3. For Plaintiffs' reasonable attorneys' fees and costs pursuant to New York Judiciary Law § 487.

### **On Count Three:**

4. For general damages according to proof at trial;

5.      For pre-judgment interest according to applicable statutes and law;

6.      For Plaintiffs' reasonable attorneys' fees and costs pursuant to applicable statute and law;

7.      For punitive damages in an amount to be proven at trial;

**On Count Four:**

8.      For a declaration that the Judgment entered against Plaintiff on February 2, 2017, on the Supreme Court of the State of New York, New York County, is VOID and unenforceable, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a);

9.      For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars all the Defendants, their assignees and anyone else acting in concert with them from commencing, prosecuting, or advancing in any way, directly or indirectly, any attempt or action to levy on Plaintiff's real property in any court, tribunal, or administrative agency in any jurisdiction of the United States and abroad, and to remove the levy imposed by the Defendants upon Plaintiff's real property located at 259 Forest Avenue, Paramus, NJ 07652.

## PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: December 7, 2017

_____
EMILE HERIVEAUX

Pro Se
259 Forest Avenue
Bergen County,
Paramus, New Jersey 07652
Phone: 347-387-9791
Email: emileheriveaux@gmail.com

*May All Praises and Glory Be to the Almighty Lord God! May God bless America!*